789 F.2d 397
 4 Fed.R.Serv.3d 1206, Prod.Liab.Rep.(CCH)P 10,976
 George A. YUNG, Margaret M. Yung, Plaintiffs-Appellants,
v.
RAYMARK INDUSTRIES, INC.; Armstrong World Industries, Inc.;
Nicolet, Inc.; Eagle Picher Industries, Inc.; The Celotex
Corp., successor in interest to Philip Carey Briggs
Manufacturing Co.; Panacon Corporation; H.K. Porter
Company, Inc.; Southern Textile Corporation;
Owens-Illinois Inc.; Turner-Newall Ltd., Defendants-Appellees.
 No. 85-3301.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 6, 1986.
Decided April 28, 1986.
 
 Michael D. Eagen (argued), Nancy A. Lawson, Dinsmore & Shohl, Cincinnati, Ohio, Thomas M. Green, Green & Green, Dayton, Ohio, for defendants-appellees.
 James F. Brockman, Lindhorst & Dreidame, Cincinnati, Ohio, for Nicolet, Inc.
 Joseph A. Gerling, Lane, Alton, & Horst, Columbus, Ohio, for Porter Co., Inc. & Southern Textile Corp.
 Robert E. Sweeney (argued), Robert P. Sweeney, Robert E. Sweeney Co., L.P.A., Cleveland, Ohio, for plaintiffs-appellants.
 Before MARTIN and KRUPANSKY, Circuit Judges, and CHURCHILL,* District Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 In this diversity asbestos-related injury action, George Yung and his wife appeal the denial of a directed verdict and the denial of a judgment notwithstanding the verdict. In a trial solely on the issue of whether the statute of limitations barred the Yungs' suit, the jury found that the action was barred and therefore the issues of liability and damages were not tried. The Yungs argue that the defendants did not produce sufficient evidence for the jury to consider and that the evidence was insufficient to form a basis for the jury's verdict. In addition, the Yungs claim that the trial court's instructions to the jury were not proper. Finally, the Yungs claim that the trial court abused its discretion by trifurcating the action so that the statute of limitations issue was tried separately from the liability issue and the damages issue.
 
 
 2
 On January 28, 1983, the Yungs filed this action claiming that George Yung had inhaled asbestos, asbestos dust and asbestos fibers while working in the industry and that this ingestion directly and proximately caused him "to develop an asbestos-related lung disease and to suffer other bodily injuries." The defendants asserted that the Yungs' claim was barred because Yung had known or should have known about his injury in 1976.
 
 
 3
 In 1976, Yung was given a physical examination by Dr. Cotton Feray. A chest x-ray in conjunction with the examination by Dr. E.K. Davis, who died before trial, was made and reported to Dr. Feray. The report, which was entered into evidence, provided,
 
 
 4
 Chest A & lateral: ... There is some old pleural calcification present in the left upper lung anteriorly and also in left lung base posteriorly and immediately above the hemidiaphragram. These areas of pleural calcification may simply be secondary to old scarring. However, calcifications such as this are sometimes seen after exposure to asbestos dust. Is there any history of such exposure?
 
 
 5
 There are some fibrotic changes in both lungs and there is blunting of both costophrenic angles which is felt to be secondary to old scarring. The lungs are otherwise clear at this time.
 
 
 6
 E.K. Davis, M.D.
 
 
 7
 Dr. Feray, who was qualified as an expert witness, testified that he showed the report to Yung and discussed the contents of the report with him. Dr. Feray testified that he gave a copy of the x-ray report to Yung. Yung testified that Dr. Feray never discussed the report with him nor was he shown the report. Yung admitted that by 1972 he knew of the dangers and illnesses associated with asbestos. In 1981, while hospitalized for heart surgery, Yung disclosed to a lung specialist that he had worked with asbestos for years. The lung specialist then diagnosed Yung's lung problems as asbestosis.
 
 
 8
 The applicable statute of limitations, Ohio Revised Code section 2305.10, states:
 
 
 9
 An action for bodily injury ... shall be brought within two years after the cause thereof arose.
 
 
 10
 For purposes of this section, a cause of action for bodily injury caused by exposure to asbestos ... arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first.
 
 
 11
 If Yung knew or should have known of his asbestos-related injury in 1976, this statute of limitations extinguished Yung's cause of action in 1978. His suit in 1983 would therefore be barred.
 
 
 12
 The Yungs argue that the defendants did not present sufficient evidence for the jury to consider and that there was insufficient evidence for the jury's verdict that the Yungs' claim was barred by the statute of limitations. As a consequence, the Yungs claim that the motions for directed verdict and judgment notwithstanding the verdict should have been granted. The defendants, by presenting the evidence outlined above, raised a question of fact whether Yung, by the exercise of reasonable diligence, should have known in 1976 that he had been injured by exposure to asbestos. The opinion of Dr. Davis in his report, admitted without objection from the Yungs, describes findings of pleural calcification, fibrotic changes, blunting of the costophrenic angles and scarring that would alert any layman to the presence of a lung injury. Yung admitted that he knew of the dangers of asbestos and its effects by 1972. The report contains the following question: "Was there exposure to asbestos to account for these findings?" This evidence, along with the disputed testimony of Dr. Feray that he gave the report to Yung and talked with him about it, raises a question of fact as to whether Yung knew or with the exercise of reasonable diligence, should have known that his lungs were injured and that the injury was asbestos-related.
 
 
 13
 Ohio law states that the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry that must be established by the opinion of medical witnesses competent to express such an opinion. Darnell v. Eastman, 23 Ohio St.2d 13, 17; 261 N.E.2d 114 (1970); Stacey v. Carnegie-Illinois Steel Corp., 156 Ohio St. 205, 101 N.E.2d 897 (1951). The report of Dr. E.K. Davis is sufficient in this statute of limitations context to satisfy the Ohio requirement. The only question that remains is whether this knowledge was given to Yung by his treating physician, Dr. Feray. We feel there is no basis to disturb the jury finding that it was.
 
 
 14
 The standards for a directed verdict and for judgment notwithstanding the verdict are basically the same. Standard Alliance Inc. v. Black Clawson Co., 587 F.2d 813, 823 (6th Cir.1978), cert. denied, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). The standard of review is whether "it is clear that reasonable men could come to only one conclusion from the evidence." Bellamy v. Bradley, 729 F.2d 416, 418 (6th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984); Coffy v. Multi-County Narcotics Bureau, 600 F.2d 570, 579 (6th Cir.1979). If there is "substantial evidence from which the jury could find in favor of the party against whom the motion is made," the motion should not be granted. Bellamy, 729 F.2d at 418. The court in considering the motions must view the evidence in a light most favorable to the party against whom the motion is made. Littlejohn v. Rose, 768 F.2d 765, 770 (6th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986). Bellamy, 729 F.2d at 418.
 
 
 15
 Considering the evidence before the jury here, we cannot say that reasonable people could only conclude that Yung did not know of his asbestos-related lung injury or that with the exercise of reasonable diligence, he could not have become aware of his asbestos-related lung disease. In a light most favorable to the defendants, the evidence establishes that Yung knew well before the 1976 examination that asbestos exposure could cause various injuries including lung diseases. A chest x-ray report of Dr. Davis noted lung calcifications and other abnormalities. The report also noted that these calcifications could be related to asbestos exposure. Dr. Davis, in his report, even asked Dr. Feray if Yung had ever been exposed to asbestos. Yung testified that he was never given the report nor told about it. Given Dr. Feray's testimony, accepted by the jury, that he gave the x-ray report to Yung it must be concluded that Yung knew or with the exercise of reasonable diligence should have known that he had asbestos-related lung injury. Having determined that Yung knew or should have known of his asbestos-related lung injury in 1976, the jury easily concluded that, according to Ohio Revised Code section 2305.10, the action for recovery for asbestos-related lung injury filed in 1983 was not within the two-year statute of limitations period and therefore was untimely. See also Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 487 (3rd Cir.1985).
 
 
 16
 The Yungs claim that prejudicial error was committed by the trial judge in charging the jury as follows:
 
 
 17
 You will be asked to answer two questions. Question number one, "Do you unanimously find that the plaintiff, George Yung, was advised by competent medical authority before January 27, 1981 that he had been injured by exposure to asbestos?"
 
 
 18
 Yes or no.
 
 
 19
 Number two, "Do you unanimously find that plaintiff, George Yung, by the exercise of reasonable diligence, should have been aware before January 27, 1981 that he had been injured by exposure to asbestos?"
 
 
 20
 Yes or no.
 
 
 21
 If you have answered either questions yes, then you will use verdict form one. Verdict form one finds in favor of the defendants and against the plaintiff, George Yung on the issue submitted.
 
 
 22
 The Yungs argue that these instructions assume that the manifestation of any bodily injury due to exposure to asbestos starts the running of the statute as to all bodily injuries that can be caused by such exposure.
 
 
 23
 Ohio Revised Code section 2305.10 represents the legislature's awareness that asbestos injuries are not apparent immediately upon exposure to asbestos and that parties should not be barred from bringing actions for injuries of which they are not cognizant. The discovery rule of 2305.10 therefore provides that the statute of limitations will not begin to run until after the party learns of his injury or with reasonable diligence should have been aware of his injury. See O'Stricker v. Jim Walter Corp., 4 Ohio St.3d 84, 88-90, 447 N.E.2d 727 (1983).
 
 
 24
 The statute does not explain whether knowledge of one type of asbestos injury causes the statute of limitations to begin running as to all asbestos-related injuries. In Craddock v. Eagle-Picher Industries, Inc., 8 Ohio App.3d 383, 457 N.E.2d 338 (Lake County Ct.App.1983), the court held that a workers' compensation claim for lung cancer was not barred, under Ohio Revised Code section 4123.85, the workers' compensation statute of limitations, by the workers' prior knowledge of lung disease. Other jurisdictions have found that knowledge of the presence of one disease stemming from a latent cause does not begin the running of the statute of limitations as to another disease caused by the same latent source. See, e.g., Wilson v. Johns-Manville Sales Corp., 684 F.2d 111 (D.C.Cir.1982) (applying D.C. law to asbestos); Goodman v. Mead Johnson & Co., 534 F.2d 566, 574 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) (applying New Jersey law to contraceptive drugs). In Wilson, a diagnosis of mild asbestosis was held not to bar a later action based on a lethal form of cancer. Wilson, 684 F.2d at 117-120.
 
 
 25
 We need not speculate as to whether Ohio would follow Wilson and treat asbestosis and cancer as separate illnesses and separate actions because those are not the facts before us. The Yungs' complaint claimed "asbestos-related lung disease" and "other bodily injuries." The evidence presented concerned Yung's knowledge in 1976 of lung injury and a diagnosis of lung injury in 1981. Other than the mention in the complaint of "other bodily injuries," the evidence does not suggest that separate and distinct illnesses are involved. Given this evidence, the jury concluded that Yung knew or should have known that he was injured and that the injury related to asbestos. Though the instructions to the jury and therefore the jury's response were more general than perhaps was necessary, the instructions were proper and in accordance with the Ohio statute of limitations.
 
 
 26
 The Yungs' final argument is that the district court abused its discretion by trifurcating the trial so that the statute of limitations affirmative defense was tried separately. Rule 42(b) of the Federal Rules of Civil Procedure provides that "the court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial" for any claim or issue. The decision whether to try issues separately is within the sound discretion of the court. Helminski v. Ayerst Lab., Div. of American Home Prod. Corp., 766 F.2d 208, 212 (6th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985); In re Beverly Hills Fire Litigation, 695 F.2d 207, 216 (6th Cir.1982). Abuse of discretion exists only where there is "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Taylor v. U.S. Parole Comm'n, 734 F.2d 1152, 1155 (6th Cir.1984) (quoting McBee v. Bomar, 296 F.2d 235, 237 (6th Cir.1961).
 
 
 27
 Here the court considered the prejudice to the Yungs as a result of a separate trial on the statute of limitations issue. However, they argue that trying the statute of limitations issue separately allowed the defendants a procedural advantage because the Yungs were required to introduce their theory of the case even before the liability aspect of the case. Any prejudice to the Yungs was offset by the benefit derived from the burden of proof being upon the defendants to prove knowledge of the lung condition on the part of Yung.
 
 
 28
 Nor, as argued by Yung, is the statute of limitations issue so connected to the liability issue that the two issues must be tried together. See Gasoline Prod. Co. v. Champlin Refining Co., 283 U.S. 494, 499-500, 51 S.Ct. 513, 514-15, 75 L.Ed. 1188 (1931). The issue as to whether the Yungs' claim was barred involved an x-ray report completed in 1976 and the actions and conversations pertaining to that report. Also, there was testimony that Yung knew of the dangers and effects of asbestos in 1972. The trial on liability would have involved evidence that Yung was exposed to asbestos, that the diseases had manifested, that the diseases were caused by asbestos ingestion, and that the defendants' conduct in producing or promoting the product or in failing to warn Yung or in some other way was responsible for Yung's injury. Though the two issues are tangentially related, the evidence on the liability issue is a much larger and a much broader body of information than that necessary for the trial of the statute of limitations question.
 
 
 29
 Here, the jury verdict determining that the statute of limitations barred recovery precluded the necessity of trying the second and third issues: liability and damages. Whether resolution of a single issue would likely dispose of an entire claim is extremely relevant in determining the usefulness of a separate trial on the issue. Beverly Hills, 695 F.2d at 216; Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 542 (8th Cir.1977). This procedure should be encouraged because court time and litigation expenses are minimized. Therefore, separate trials on a statute of limitations issue are particularly appropriate. See, e.g., Braun v. Berenson, 432 F.2d 538, 541 (5th Cir.1970); Ellingson Timber Co. v. Great Northern Ry., 424 F.2d 497, 498 (9th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1970); Burnham Chem. Co. v. Borax Consol., Ltd., 170 F.2d 569 (9th Cir.1948), cert. denied, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086 (1949). The case was originally given seven to ten days for trial. Yet, only two days were used. Certainly judicial economy was served by dealing with the statute of limitations issue separately.
 
 
 30
 The judgment of the district court is affirmed.
 
 
 
 *
 Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation