**James BURKE and Victoria Burke, Plaintiffs,**

v.

**TRANSAM TRUCKING, INC. and Gregory Wirfel, Defendants,**

v.

**Rinehimer Bus Lines, Inc. and Nick Paolello.**

**Civil Action No. 03:06–CV–2090.**

United States District Court, M.D. Pennsylvania.

March 31, 2009.

Marion K. Munley, Munley, Munley & Cartwright, Scranton, PA, Matthew A. Cartwright, Munley, Munley & Cartwright, Plains, PA, for Plaintiffs.

David Ronald Chludzinski, Gary N. Stewart, Rawle & Henderson LLP, Harrisburg, PA, for Defendants.

Thomas P. Comerford, Foley, Cognetti, Comerford & Cimini, Scranton, PA, for Rinehimer Bus Lines, Inc., and Nick Paolello.

### MEMORANDUM

RICHARD P. CONABOY, District Judge.

Before the Court for consideration is Defendants' Motion for Partial Summary Judgment (Doc. 91). This case arises from a vehicle accident involving the commercial tractor-trailer driven by Gregory Wirfel ("Defendant Wirfel") and the automobile driven by James Burke ("Plaintiff"). (Doc. 57). At all times relative to this accident, Defendant Wirfel was employed by TransAm Trucking, Inc. ("TransAm"). (Doc. 93 at 2.) Plaintiffs allege Defendants are liable for damages resulting from the accident. (*Id.*) Defendants bring the present motion requesting the Court grant partial summary judgment on Counts III, V, VI, VII and VIII of Plaintiffs' Amended Complaint, arguing that Plaintiffs' claims for punitive damages should be dismissed because Plaintiffs cannot establish that Defendants' conduct was deliberate and outrageous, and that Plaintiffs' claims for negligent hiring, training, instruction, monitoring, supervision and entrustment against Defendant TransAm should be dismissed as irrelevant because Defendant TransAm trucking has admitted that Defendant Wirfel acted within the course and scope of his employment. (Doc. 91.) Based on the discussion below, we will deny the motion.

### I. BACKGROUND [1]

On April 10, 2006, Plaintiff James Burke's vehicle was struck from behind by a tractor trailer operated by Defendant Gregory Wirfel and owned by TransAm. (Doc. 100 at 1.) Plaintiff was traveling on Route 940 in White Haven, Pennsylvania, and was stopped for a school bus at the time of the accident. (*Id.*)

On August 30, 2006, Plaintiffs initiated a lawsuit against Defendants in the Court of Common Pleas of Luzerne County. (Doc. 91 at 2.) Subsequently, on October 24, 2006, Defendants removed the action to this Court. (*Id.*) Plaintiffs' original Complaint contained four counts against Defendants, and no punitive damage count existed. (*Id.*) After initial discovery was conducted, Plaintiffs filed their Amended

---

**1.** The background is primarily derived from Plaintiffs' Brief in Opposition to Defendants' Motion for Partial Summary Judgment (Doc. 100).

Complaint on January 22, 2008, which included four counts against Defendants alleging punitive damages. (*Id.*) Plaintiffs allege they are entitled to punitive damages against both Defendants Wirfel and TransAm because their conduct was outrageous and/or done willfully, wantonly and/or with reckless indifference.

On January 30, 2009, Defendants' Motion for Partial Summary Judgment (Doc. 91) was filed with a brief in support (Doc. 93). Defendants admit Defendant Wirfel was acting within the course and scope of his employment with Defendant TransAm at the time of the accident, however, Defendants move for partial summary judgment seeking dismissal of Plaintiffs' claims for punitive damages and any claims against Defendant TransAm apart from *respondeat superior.* (Doc. 93 at 15.); (Doc. 91.)

On February 16, 2009, Plaintiffs filed their Brief in Opposition to Defendants' Motion for Partial Summary Judgment (Doc. 100), Plaintiffs' Response to Defendants' Short and Concise Statement of Material Facts (Doc. 101), and Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment (Doc. 102). On March 2, 2009, Defendants' Reply to Defendant's Motion for Partial Summary Judgment was filed. (Doc. 137.) Defendants also filed a Supplemental Brief in Support of their Motion for Partial Summary Judgment (Doc. 183) on March 20, 2009. The motion is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe*

*v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir. 1997) (*citing* Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Levendos v. Stern Entertainment Inc.,* 860 F.2d 1227, 1233 (3d Cir.1988). An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.,* 364 F.3d 135, 140 (3d Cir.2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. The moving party may meet this burden by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The nonmoving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## III. DISCUSSION

Based on the following discussion, we will deny Defendants' Motion for Partial Summary Judgment (Doc. 91). In the supporting documents to Defendants' instant motion, they assert Plaintiffs' claims for punitive damages should be dismissed because Plaintiffs cannot establish that Defendants' conduct was deliberate and outrageous. (Doc. 93 at 9.) Additionally, Defendants contend Plaintiffs' claims for negligent hiring, training, instruction, monitoring, supervision and entrustment against Defendant TransAm should be dismissed as irrelevant because Defendant TransAm has admitted that Defendant Wirfel was acting within the course and scope of his employment at the time of the

**2.** The parties do not dispute that Pennsylvania law applies in this diversity action. Defendants cite the Third Circuit Court of Appeals decision in *Burke v. Maassen,* 904 F.2d 178 (3d Cir.1990), for the proper standard to analyze a punitive damages claim under Pennsylvania law. (Doc. 93 at 6.) At the time the Third Circuit decided *Burke,* the state of the law on punitive damages was unsettled in Pennsylvania. *See Gregory v. Sewell,* 2006

accident. (*Id.* at 11.) We will address each of Defendants' arguments in turn.

### A. Punitive Damages

We now turn to Defendants' assertion that Plaintiffs' punitive damages claims should be dismissed. (Doc. 91 at 7.) Our analysis will first address Plaintiffs' punitive damages claim against Defendant Wirfel and then Defendant TransAm.

#### 1. Defendant Wirfel

In 2005, the Pennsylvania Supreme Court observed:

The standard governing the award of punitive damages in Pennsylvania is settled. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.

*Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766, 770 (2005) (quotations and citations omitted).[2] A plaintiff seeking to demonstrate that a defendant's conduct was outrageous must establish the defendant possessed the requisite state of mind. *Hutchison,* 870 A.2d at 770–71. The defendant's action or inaction must be intentional, reckless or malicious. *Id.* at 771. The court explained:

WL 2707405 at *10 n. 3 (M.D. of Pa.2006) (Jones, J.). The Court of Appeals did not have the benefit of the Pennsylvania Supreme Court's decision in *Hutchison.* Given the definitive word of the Pennsylvania Supreme Court on Pennsylvania law, we will utilize the standard from *Hutchison* to analyze Defendants' assertion that Plaintiffs' claims for punitive damages should be dismissed.

Thus, in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.

*Hutchison,* 870 A.2d at 772.

■ In this case, Plaintiffs allege Defendant Wirfel acted with reckless indifference by operating a tractor trailer at an excessive rate of speed and without paying attention to the roadway before him and for operating his vehicle in violation of the rules and regulations of the Federal Motor Carrier Safety Regulations ("FMCSR"). (Doc. 57 at 12–13.) Plaintiffs allege Defendant Wirfel had a history of speeding violations, failed to document his travel log as required by law, failed to maintain a proper driver's log, and failed to observe driver rest requirements. (*Id.* at 13.)

According to Defendants, no genuine issue of material fact exists as to whether punitive damages are appropriate because this case is a simple negligence case involving a driver who failed to stop his vehicle prior to impact. (Doc. 93 at 13.) Defendants contend the accident occurred immediately following a blind corner where, without notice or warning, a bus was stopped discharging students. (*Id.*) Defendants argue that an investigation of the accident scene was conducted by Defendants' reconstruction expert and based upon the skid marks from Defendant Wirfel's vehicle, the reconstruction expert opined that Defendant Wirfel was likely traveling between thirty-five and forty miles per hour prior to the accident. (*Id.*) Defendants assert the speed limit where the accident occurred was thirty-five miles per hour, and Defendant Wirfel was traveling, at most, only five miles per hour over the speed limit prior to the accident. (*Id.*)

Defendants also argue that despite the Pennsylvania School Bus Driver's Manual that states the placement of school bus stops should be in locations where there is at least 500 feet of sight distance in both directions, from the direction Defendant Wirfel was traveling, the sight distance for the bus stop where the accident occurred was only 175 to 200 feet. (*Id.* at 10.) Finally, Defendants assert at the time of the accident, Defendant Wirfel was not under the influence of drugs or alcohol, and the police officer responding to the accident did not charge Defendant Wirfel for any FMCSR violations, including improper or illegal logs, or any other mechanical violations with respect to the tractor-trailer he was operating. (*Id.* at 11.) Defendants ultimately contend that Plaintiffs have failed to produce any evidence which would tend to show Defendants acted in an outrageous or reckless manner. (*Id.*)

In opposition, Plaintiffs contend that genuine issues of material fact exist regarding Defendants' reckless and outrageous conduct. Plaintiffs argue that its reconstruction expert, Joseph Tarris, examined the scene of the accident and determined that Defendant Wirfel was exceeding the posted speed limit and was operating his vehicle in an inattentive manner. (Doc. 100 at 15.) With regards to Defendants' claim that the accident occurred on a "blind corner," Tarris found the measurements show that the sight lines for the location of the accident are nearly twice those required for this type of curve and that Defendants' reliance on its reconstruction expert's report is misplaced. (*Id.*) Regarding Defendant Wirfel's speed, Plaintiffs assert that Richard Henry, a witness who was following Defendant Wirfel at the time of the accident,

stated that Defendant Wirfel was traveling 55 miles per hour as he approached the curve. (*Id.* at 17.) Further, Nick Paolello, the driver of the stopped school bus who witnessed the accident, also stated he believed Defendant Wirfel was traveling about 55 miles per hour. (*Id.*) Finally, Plaintiffs' reconstruction expert, Tarris, determined that Defendant Wirfel was traveling at a minimum speed of 43 mile per hour. (*Id.*) In addition to speeding, Plaintiffs argue Defendant Wirfel was not maintaining a sufficient distance to avoid collision or keeping a proper lookout. (Doc. 100 at 16.)[3] Plaintiffs contend Defendants' motion for summary judgment on punitive damages should be denied because, under these facts, there exists genuine issues of material fact as to whether or not a tractor trailer driver was acting with reckless disregard by speeding under these conditions. (Doc. 100 at 21 (*citing Gregory v. Sewell*, 2006 WL 2707405 (M.D.Pa.2006) (The defendant's motion for summary judgment as to the plaintiffs' punitive damages claims denied where genuine issue of material fact as to whether or not the driver was speeding and driving too fast for the icy conditions)).)

In addition to speeding and failing to pay proper attention to the roadway, Plaintiffs argue genuine issues of material fact exist regarding whether or not Defendant Wirfel's reported history of log falsification demonstrates reckless indifference to the safety of the traveling public. (Doc. 100 at 17.) Plaintiffs assert that David Cole, TransAm's Safety and Compliance manager, whose main job it was to keep compliance with the FMCSR, testified that a manual audit was performed on Defendant Wirfel's logs after his accident. (Doc. 100 at 8–10.) Plaintiffs assert that several issues of falsification were identified in this audit. This audit showed an occasion in which Defendant Wirfel would have had to travel 120 miles per hour to make the trip in the time on the logs. (*Id.*) Mr. Cole admitted that this was not physically possible, however this was not considered a log violation. (*Id.*) Mr. Cole also testified there were times when Defendant Wirfel was moving when the log showed him in the sleeper birth. (*Id.*) In fact, the audit found violations on 20 of the 29 days in which Defendant Wirfel was driving in the month before this accident. (Doc. 100 at 10.) Between November 2005 and April 2006, Defendant TransAm issued a total of seven warning letters and log audits to Defendant Wirfel. (*Id.*) These audits found numerous violations, including violations of duty of status totals, speeding, violations of the hours of service violations, dropping miles, adding miles, duplicate logging, falsification of logs, illegible records and missing mileage. (*Id.*)

Kerry Nelson, Plaintiffs' expert in commercial motor carrier operations, reviewed the Defendant Wirfel's logs and found several other specific instances of falsification. (Doc. 100 at 12.) Mr. Nelson found that on April 9, 2006, the day before the accident, although Defendant Wirfel's logs indicated that he was off duty from 6 p.m. until 8 p.m., the GPS records showed that Defendant Wirfel had actually traveled 216 miles, not stopping until 10 p.m. (*Id.*)

**3.** Kerry Nelson, Plaintiffs' expert in commercial motor carrier operations, notes that, according to the Commercial Driver License Manual, the recommended following distance for a CMV is one second for every ten foot of truck when traveling below 40 miles per hour. Plaintiffs contend even assuming Defendant Wirfel was traveling below 40 miles per hour, he should have allowed 6.5 seconds of following distance as his truck was 65 feet long. Plaintiffs argue the fact that Defendant Wirfel struck Plaintiff James Burke indicates that Defendant Wirfel did not maintain sufficient following distance to avoid the collision. (Doc. 100 at 12–13.)

Plaintiffs argue on the day of the accident, Mr. Nelson found Defendant Wirfel had been driving for almost 14 hours, covering a distance of 665 miles. (Doc. 100 at 12.) Plaintiffs contend this was in violation of the hours of service regulation, which limits the time allowed for driving at any one consecutive time to a maximum of 11 hours, at which time the driver must take a ten hour break. (*Id.*) Mr. Nelson determined that Defendant Wirfel would not have been at the scene of this accident until considerably later if he complied with the hours of service regulation. (*Id.*)

Plaintiffs contend that violation of the applicable FMCSR and Defendant Wirfel's history of speeding has been held sufficient to support an award of punitive damages. (Doc. 100 at 20 (*citing Esteras v. TRW, Inc.*, 2006 WL 2474049 (M.D.Pa. Aug. 25, 2006) (Caputo, J.); *Came v. Micou*, 2005 WL 1500978 (M.D.Pa. June 23, 2005) (Jones, J.); *Schafer v. Wickham*, 1999 WL 961273 at *2, 3 (E.D.Pa. Oct. 15, 1999) (Green, J.); *Wang v. Marziani*, 885 F.Supp. 74, 79 (S.D.N.Y.1995)).)

In Defendants' Reply Brief (Doc. 137), Defendants argue that any factual differences regarding Defendant Wirfel's speed and Defendant Wirfel's description of the location of the accident should be facts considered regarding Plaintiffs' negligence claims and not a punitive damage claim. Defendants argue that in *Burke v. Maassen*, 904 F.2d 178 (3d Cir.1990), the Third Circuit noted that the Defendant driver admitted to speeding, driving over 14 hours on the day of the accident, falsifying drivers' logs and there was even circumstantial evidence that the Defendant driver had fallen asleep at the wheel, but held that even with these admissions and evidence discovered, an award of punitive damages was not warranted. (Doc. 137 at 3.) Defendants argue that Plaintiffs' have produced no evidence through the course of discovery that Defendant Wirfel was acting with malice, intent, or even a reckless indifference to the rights of others regarding speed at the time of the accident, maintaining proper lookout or maintaining sufficient distance. (*Id.*)

Defendants contend the only Pennsylvania case cited by Plaintiffs which discusses speed being the primary reason not to grant Defendant's summary judgment motion with respect to punitive damages is *Gregory v. Sewell*, 2006 WL 2707405 (M.D.Pa.2006). (*Id.* at 4.) In *Gregory*, the Court made specific mention of the fact that the accident occurred at night, on icy and hazardous weather conditions, which defendant knew about, and he disregarded them by traveling at a high rate of speed, even after recently passing a prior accident scene. (*Id.*) Defendants assert that there are no such facts of bad or hazardous road conditions in the instant matter, or of a prior accident in the location of the accident here. (*Id.*)

Defendants further argue that Plaintiffs' claims of violations of the FMCSR are not sufficient to support a claim of punitive damages because such violations are not alleged to have caused the accident in question. (Doc. 137 at 5.) Defendants attempt to distinguish the cases offered by Plaintiffs for the notion that violations of the FMCSR are sufficient to support an award of punitive damages. (*Id.*)

Defendants argue that although Defendant Wirfel and designees of Defendant TransAm have admitted to having an understanding and knowledge of the purpose behind the FMCSR regarding hours of service, there has been no evidence proffered by Plaintiffs that Defendant Wirfel was in fact fatigued at the time of the accident or whether fatigue played a role in this accident. (*Id.* at 11–12.) Defendants contend, even assuming that there were violations of the hours of service

regulations, Plaintiffs have not offered any evidence to establish a genuine issue of material fact sufficient to show that this accident was caused by a violation of hours of service or that Defendant Wirfel acted in conscious disregard of those risks. (*Id.* at 12.) Finally, in Defendants' Supplemental Brief, Defendants point out that in Plaintiffs' Response in Opposition to Defendants' Motion in Limine to Preclude Evidence of Hours of Service Violations (Doc. 153), Plaintiffs admit that they did not produce an expert report regarding fatigue because Plaintiffs are not alleging that this accident occurred due to fatigue. (Doc. 183 at 2.) Because of Plaintiffs' concession that this accident did not occur due to fatigue, Defendants argue that there is no genuine issue of material fact which would justify punitive damages. (*Id.* at 3.)

Considering all of the facts in the light most favorable to Plaintiffs, the Court finds that there is a genuine issue of material fact regarding Defendant Wirfel's culpability for punitive damages and Defendants' motion for summary judgment with respect to Plaintiffs' claims for punitive damages against Defendant Wirfel should accordingly be denied. Having reviewed the record submitted by the parties and drawing any inferences and resolving any controverted evidence in favor of the Plaintiffs, the nonmovants here, the Court finds a reasonable fact finder could determine that Defendant Wirfel's conduct was in conscious disregard to known risks.

Here the parties dispute whether Defendant Wirfel was speeding prior to the accident, and whether the accident occurred near a blind corner. It is not the Court's task here to weigh the conflicting evidence, but it is the Court's task to evaluate whether the conflict presented by evidence is genuine and material. The Court finds that it is. It would not be unreasonable for a jury to find that Defendant Wirfel, with his experience and training, consciously appreciated the risk of harm from driving fifty-five miles per hour in a thirty-five mile per hour zone around a curve and consciously disregarded or was indifferent to that risk. Although there are no facts of bad or hazardous road conditions as in *Gregory*, the Court finds that based on Defendant Wirfel's experience and training, a jury could find that he consciously appreciated the risk of harm that could result by traveling twenty miles an hour over the speed limit in a tractor trailer while approaching a "blind" curve.

The Court recognizes that Plaintiffs' burden in proving punitive damages is higher than their burden in proving ordinary negligence. But if a jury were to credit Plaintiffs' arguments and evidence over Defendants' arguments and evidence, it could support a finding of fact that Defendant Wirfel's conduct was outrageous, satisfying the higher burden necessary to allow Plaintiffs to receive punitive damages. This analysis infers that in order for the jury to receive a charge on punitive damages the Court must first be satisfied that Plaintiffs presented sufficient evidence at trial for a reasonable fact finder to find Plaintiffs are entitled to punitive damages.

Thus, consistent with our standard of review and the elements necessary to support a punitive damages claim under Pennsylvania law, we find the record in this case demonstrates genuine issues of material fact exist as to Defendant Wirfel's subjective appreciation of the risk to which Plaintiff was exposed.

### 2. Defendant TransAm

Turning to Plaintiffs' claim for punitive damages against Defendant TransAm, we again find summary judgment is not warranted at this stage in the proceedings.

As previously discussed, a plaintiff seeking punitive damages must demonstrate that the defendant possessed (1) a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Hutchison,* 870 A.2d at 772.

In their Amended Complaint, Plaintiffs allege Defendant TransAm is liable for punitive damages because it knew or should have known a serious injury to other drivers could result by permitting Defendant Wirfel to operate its tractor trailer when he was unable to do so properly and after he exhibited a pattern and course of conduct of violating the FMCSR Hours of Service limitations and speeding. (Doc. 57 at 16–17.)

According to Plaintiffs, substantial evidence exists that Defendant TransAm actually knew that Defendant Wirfel was falsifying his logs on a daily basis, but despite this, never disciplined Defendant Wirfel or took any steps to prevents its driver from continuing to drive despite consistently operating in excess of the hours of service regulations and posted speed limits. (Doc. 100 at 13–14.) Plaintiffs contend that there is evidence that Defendant Wirfel routinely sped and that Defendant TransAm did nothing about this. (Doc. 100 at 17.)

Plaintiffs distinguish the present matter from *Burke v. Maassen,* 904 F.2d 178 (3rd Cir.1990), because here Defendants admitted that they were fully aware of the safety purpose behind the hours of service regulations. (Doc. 100 at 21–22.) Despite this, Defendant Wirfel routinely drove over hours and then attempted to falsify his log books to hide this fact. (*Id.* at 22.) Defendant TransAm did nothing to discipline Defendant Wirfel, even though its own computer audits listed numerous violations for him from November 2005

through April 2006. (*Id.*) In fact, Defendant TransAm's own audit found violations on 20 of the 29 days in which Defendant Wirfel was driving in the month before this accident. (Doc. 100 at 6.) Plaintiffs contend that Defendant TransAm could have compared the GPS reports to Defendant Wirfel's logs to show that he was moving when his logs showed he was stopped. (Doc. 100 at 22.)

Plaintiffs contend that genuine issues of material fact exist regarding whether or not Defendants' actions were recklessly indifferent to the public's safety. (*Id.* at 24–25.) Plaintiffs assert they can demonstrate that both Defendants Wirfel and TransAm simply ignored the regulations that they knew were designed to prevent accidents such as this one. (*Id.*)

We previously discussed that a plaintiff must demonstrate a genuine issue of material fact exists as to the claim or portion of the claim sought to be dismissed. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Levendos,* 860 F.2d at 1233. We find a genuine issue of material fact exists as to Defendant TransAm's subjective appreciation of the risk of permitting Defendant Wirfel to drive despite his history of speeding, driving over hours and log falsification. Defendant TransAm's subjective appreciation of the risk of harm may be evidenced by knowledge attributable to the corporation of the risk attendant when tractor-trailer drivers operate in violation of the hours of service regulations, falsify logs, and continually drive over the speed limit. The Court finds Plaintiffs' assertion that Defendant TransAm engaged in a pattern and course of conduct of permitting Defendant Wirfel to drive over his hours of service and continue to violate speeding regulations may demonstrate a conscious disregard of the risk of harm. The viability of these assertions remain despite Defendants' arguments to the contrary. We

find Plaintiffs are entitled to pursue these issues at trial. Thus, we find summary judgment in favor of Defendant TransAm on the issue of punitive damages is not appropriate at this stage in the proceedings.

■ Even if Defendant TransAm's independent actions were not sufficient to survive summary judgment, punitive damages may still be awarded against it for the actions of Defendant Wirfel. The Pennsylvania Superior Court has recognized that, "Punitive damages may be awarded on the basis of vicarious liability." *Shiner v. Moriarty,* 706 A.2d 1228, 1240 (Pa.Super.1998); *see also Arias v. Decker Transportation,* 2008 WL 450435, at *4 (M.D.Pa. Feb. 14, 2008) (Caputo, J.). The court observed that Pennsylvania law does not require "an agent to commit a tortious act at the direction of the principal, nor must the principal ratify the act, in order for punitive damages to be imposed on him." *Shiner,* 706 A.2d at 1240. Thus, summary judgment on Plaintiffs' punitive damages claim against Defendant TransAm is not warranted at this time.

## B. Negligent Entrustment, Supervision, and Control

We now turn to Defendants argument that Plaintiffs' claims for negligent entrustment, supervision, and control should be dismissed. (Doc. 93 at 15.) We find summary judgment is not warranted on Plaintiffs' claims.

The Pennsylvania Superior Court has recognized that Restatement (Second) of Agency § 213 (1958) states the existing tort law in Pennsylvania. *Brezenski v. World Truck Transfer, Inc.,* 755 A.2d 36, 42 (Pa.Super.2000). The court observed that § 213 imposes "on an employer the duty to exercise reasonable care in selecting and controlling employees." *Id.* In relevant part, § 213 provides:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

. . .

(b) in the employment of improper person 20 or instrumentality in work involving risk of harm to others:

(c) in the supervision of the activity;

(d) or in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, . . . with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958).

In this case, Defendants argue that Plaintiffs' claims against Defendant TransAm for negligent hiring, supervision, monitoring and entrustment should not be permitted to go forward because Defendant TransAm has admitted that Defendant Wirfel acted within the course and scope of his employment at the time of the accident. (Doc. 93 at 15.) Therefore, Defendant TransAm is liable to Plaintiffs for Defendant Wirfel's negligence, if any, pursuant to the doctrine of *respondeat superior.*

According to Defendants, claims for negligent hiring, supervision, monitoring and entrustment are duplicative and prejudicial when elements of *respondeat superior* are established. (*Id.* at 15–17.) Defendants argue that because Defendant TransAm has admitted agency, claims for negligence, hiring, training, instruction, monitoring, supervision and entrustment serve no usable purpose in this case. (*Id.* at 12.) Defendants claim if the trier of fact determines that Defendant Wirfel was not negligent, Defendant TransAm cannot be liable to Plaintiffs, even under a cause of action for negligent supervision and entrustment. (*Id.*) However, if Defendant

Wirfel is found to be liable to Plaintiffs, Defendant TransAm will be liable to Plaintiffs under the doctrine of *respondeat superior*. (*Id.*) Where agency is admitted, evidence of negligent training, monitoring and supervision serves no useful purpose except to prejudice the jury. (*Id.*)

In support Defendants cite *Holben v. Midwest Emery Freight System*, 525 F.Supp. 1224 (W.D.Pa.1981) and *Vargo v. Coslet*, Civil No. 3 CV–02–676, 2002 WL 34443599 (M.D.Pa. Dec. 20, 2002) (Kosik, J.), for the idea that "to permit a case to proceed on *respondeat superior* and negligent entrustment would allow the evaluation of evidence which would be highly prejudicial and inadmissible in a cause of action based on the imputed negligence of the driver alone."

Defendants also cite several jurisdictions which have precluded claims for negligent hiring and retention where there was no viable claim for punitive damages and the plaintiff proceeded against the defendant on a theory of *respondeat superior*. (*Id.* at 17–19.)

Plaintiffs contend that although Defendant TransAm admits that Defendant Wirfel was its employee and was driving the tractor trailer in the course and scope of his employment at the time of the accident, Defendants do not accept responsibility for the accident. (Doc. 100 at 21.) Plaintiffs distinguish *Holben* and *Vargo* from the present matter. (*Id.* at 21–22.) Plaintiffs claim that this is not a case, such as *Holben*, 525 F.Supp. 1224, in which Plaintiffs are attempting to introduce evidence of prior accidents. (*Id.* at 22.) Further, Plaintiffs argue that *Holben* actually holds against TransAm as the Court found that punitive damage claims against a trucking company should not be dismissed when the company was aware of the driver's prior driving history. (*Id.*) Likewise, Plaintiffs argue that *Vargo*, Civil No. 3 CV–02–676

(M.D.Pa. Dec. 20, 2002), is distinguishable from the present matter because it did not involve a claim for punitive damages. (*Id.*) There, the Court noted that a claim for negligent entrustment, by itself, was insufficient to support a claim for punitive damages. (*Id.*) However, Plaintiffs claim this is not the case here. (*Id.*) Here, Plaintiffs will introduce evidence of Defendant TransAm's own improper actions, and Plaintiffs claims for punitive damages are not based solely on negligent entrustment, making the *Vargo* case inapplicable. (*Id.*)

Preliminarily, we note none of the cases cited by Defendants for the preclusion of a negligent hiring and retention claim under circumstances similar to those presented in this case are from a Pennsylvania state court. Defendants do not cite any authority binding on this Court for the above proposition.

■ As we discussed above, we found Plaintiffs' punitive damages claims against Defendants Wirfel and TransAm sufficient to survive summary judgment at this stage in the proceedings. While Defendant TransAm admits that Defendant Wirfel was its employee and was driving the tractor trailer in the course and scope of his employment at the accident, they do not accept responsibility for the accident. As outlined above, there are genuine issues of material fact regarding Defendant TransAm's own actions in this case. Furthermore, Defendants' argument that Plaintiffs' negligent hiring, supervision, monitoring and entrustment claims should be dismissed seems to be contingent on a lack of a viable punitive damages claim. In regards to Plaintiffs' punitive damages claim against Defendant TransAm, we discussed above that Plaintiffs' claims are premised on Defendant TransAm's independent acts, or its failure to act, as well as it's vicarious liability for the actions of Defendant Wirfel. Given our finding that

Plaintiffs' punitive damages claims go forward, we find summary judgment on Plaintiffs' negligent hiring, supervision, monitoring and entrustment claims inappropriate at this stage in the proceedings.

## IV. CONCLUSION

Based on the discussion above, we find summary judgment is not warranted at this stage in the proceedings on Plaintiffs' punitive damages claims and the claims for negligent hiring, supervision, monitoring and entrustment. We will deny Defendants' Motion for Partial Summary Judgment (Doc. 91). An appropriate Order follows.

### *ORDER*

AND NOW, this 31st day of March 2009, for the reasons discussed in the accompanying Memorandum, Defendants' Motion for Partial Summary Judgment (Doc. 91) is DENIED.